
Slip Op. 20-16

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MID CONTINENT STEEL & WIRE, INC. ET AL., <br><br>    Plaintiff and Consolidated Plaintiffs, <br><br>v. <br><br>UNITED STATES, <br><br>    Defendant, <br><br>  and <br><br>PT ENTERPRISE INC. ET AL., <br><br>    Defendant-Intervenors and Consolidated Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br>Consol. Court No. 15-00213 |

### MEMORANDUM AND ORDER

[Granting Plaintiffs' motion for injunctive relief.]

Dated: February 7, 2020

Adam Henry Gordon and Ping Gong, The Bristol Group PLLC, of Washington, DC, for plaintiff and consolidated defendant-intervenor Mid Continent Steel & Wire, Inc.

Ned Herman Marshak and Andrew Thomas Schutz, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY, and Washington, DC, for consolidated plaintiffs and defendant-intervenors PT Enterprise Inc., Pro-Team Coil Nail Enterprise Inc., Unicatch Industrial Co., Ltd., WTA International Co., Ltd., Zon Mon Co., Ltd., Hor Liang Industrial Corporation, President Industrial Inc., and Liang Chyuan Industrial Co., Ltd.

Mikki Cottet, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge:  Before the court is Plaintiffs' PT Enterprise Inc. ("PT"), Pro-Team Coil Nail Enterprise Inc. ("Pro-Team"), Unicatch Industrial Co., Ltd. ("Unicatch"), WTA International Co., Ltd. ("WTA International"), Zon Mon Co., Ltd. ("Zon Mon"), Hor Liang Industrial Corp. ("Hor Liang"), President Industrial Inc., and Liang Chyuan Industrial Co., Ltd ("Liang Chyuan") (collectively "Taiwan Plaintiffs") motion for a preliminary injunction to enjoin liquidation of entries of certain steel nails subject to the antidumping duty ("ADD") order in <u>Certain Steel Nails From the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam</u>, 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015) ([ADD] orders) ("<u>ADD Order</u>").  See Taiwan Plaintiffs' Mot. Prelim. Inj., Jan. 10, 2020, ECF No. 136 ("Pls.' Br.").  Taiwan Plaintiffs specifically seek an injunction, pursuant to U.S. Court of International Trade Rule ("USCIT") Rules 56.2(a) and 65(a) and Section 516A(c)(2) of the Tariff Act of 1930,[1] as amended, 19 U.S.C. § 1516a(c)(2) (2012),[2] that covers unliquidated entries, subject to the <u>ADD Order</u>, produced or exported by Taiwan Plaintiffs, and entered, or withdrawn from warehouse, for consumption into the United States on or after May 20, 2015.  See Pls.' Br. at 1, Proposed Order.  Defendant partially opposes Taiwan Plaintiffs' motion and does not consent to the proposed "indefinite and open-ended" injunction.  Def.'s Partial Opp'n [Pls.' Br.] at 1–2, Jan. 31, 2020, ECF No. 138 ("Def.'s Br.").  Instead, Defendant requests that any injunction entered by the court be limited to the period May 20, 2015 to June 30,

---

[1] Taiwan Plaintiffs seek an injunction based upon 19 U.S.C. § 1516a(c)(2), which provides that "the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances."

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

2018, the end of which corresponds to the conclusion of the third period of review. Id. at 2. Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent")[3] opposes Taiwan Plaintiffs' motion, and requests that the court either deny the motion in full or set June 30, 2018 as the end-date to the proposed injunction. See [Mid Continent's] Resp. Opp'n [Pls.' Br.] at 1, Jan. 31, 2020, ECF No. 137 ("Def.-Intervenor's Br."). For the reasons that follow, this court grants Taiwan Plaintiffs' motion for injunctive relief for unliquidated entries of subject merchandise, subject to the ADD Order, entered or withdrawn from warehouse for consumption, on and after May 20, 2015.

## BACKGROUND

On May 20, 2015, Commerce published its final determination in its less-than-fair-value ("LTFV") investigation of certain steel nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam. See Certain Steel Nails from Taiwan, 80 Fed. Reg. 28,959 (Dep't Commerce May 20, 2015) (final determination of sales at [LTFV]) ("Final Results") and accompanying Issues and Decisions Memo. for the [Final Results], A-583-854, (May 13, 2015), available at https://enforcement.trade.gov/frn/summary/taiwan/2015-12247-1.pdf (last visited Feb. 6, 2020). Commerce instructed Customs and Border Protection ("CBP") to suspend liquidation of entries subject to the ADD investigation. See Final Results, 80 Fed. Reg. at 28,961. Following an affirmative injury determination, Commerce issued an ADD order, where it directed CBP to continue to suspend liquidation from the publication date of its

---

[3] Mid Continent is also a plaintiff in this proceeding. See Summons, Aug. 6, 2015, ECF No. 1; Compl., Sept. 4, 2015, ECF No. 9.

final determination, May 20, 2015, and to collect cash deposits on subject merchandise. See ADD Order, 80 Fed. Reg. at 39,996.

Mid Continent and Taiwan Plaintiffs commenced separate actions challenging various aspects of the Final Results, which were later consolidated. See Summons, Aug. 6, 2015, ECF No. 1; Compl., Sept. 4, 2015, ECF No. 9; see also Order, Nov. 19, 2015, ECF No. 20 (consolidating Ct. Nos. 15-00213 and 15-00220 under Ct. No. 15-00213). The court remanded in part Commerce's final determination in Mid Continent Steel & Wire, Inc. v. United States, 41 CIT __, __, 219 F. Supp. 3d 1326, 1351 (2017) ("Mid Continent I"), and, following Commerce's redetermination, this court sustained Commerce's remand results. Mid Continent Steel & Wire, Inc. v. United States, 41 CIT __, __, 273 F. Supp. 3d 1161, 1170 (2017) ("Mid Continent II"). Mid Continent and Taiwan Plaintiffs appealed the court's decision. The Court of Appeals for the Federal Circuit ("Court of Appeals") affirmed in part, and vacated and remanded in part, Commerce's final determination concerning PT's margin. Mid Continent Steel & Wire, Inc. v. United States, 940 F.3d 662, 675 (Fed. Cir. 2019) ("Mid Continent III"). Commerce's remand results are expected March 16, 2020. Scheduling Order, Dec. 11, 2019, ECF No. 135.

Concurrent with litigation surrounding Commerce's LTFV determination, Commerce concluded its first and second annual reviews. On February 13, 2018, Commerce published the final results in the first administrative review ("AR 1") covering entries for the period of review May 20, 2015 to June 30, 2016 ("POR 1"). See Certain Steel Nails from Taiwan, 83 Fed. Reg. 6,163 (Dep't Commerce Feb. 13, 2018) (final results of [ADD] admin. review and partial rescission of admin. review; 2015–2016). PT, Pro-Team, Unicatch, Hor Liang, and Romp Coil Nails Industries Inc. ("Romp") obtained

injunctions for those entries, pending judicial review of Commerce's AR 1 final determination. See Order, Feb. 23, 2018, ECF No. 12, from associated docket Ct. No. 18-00027; see also Order, Feb. 28, 2018, ECF No. 15, from associated docket Ct. No. 18-00028. On March 27, 2019, Commerce published the final results in the second administrative review ("AR 2"), covering the entries for the period of review July 1, 2016 to June 30, 2017 ("POR 2"). See Certain Steel Nails from Taiwan, 84 Fed. Reg. 11,506 (Dep't Commerce Mar. 27, 2019) (final results of [ADD] admin. review and partial rescission of admin. review; 2016–2017). Unicatch obtained an injunction on entries for the period of review, pending judicial review of the AR 2 final determination. See Order, Apr. 17, 2019, ECF No. 10, from associated docket Ct. No. 19-00052.

The final results in the third administrative review ("AR 3"), covering the period of review July 1, 2017 to June 30, 2018 ("POR 3"), are pending. See Certain Steel Nails from Taiwan, 84 Fed. Reg. 48,116 (Dep't Commerce Sept. 12, 2019) (prelim. results of [ADD] admin. review; 2017–2018). Pursuant to Commerce's liquidation instructions to CBP, liquidation for entries for Liang Chyuan, PT, Pro-Team, Unicatch, Hor Liang, and Romp, i.e., companies that requested review, remain suspended. See Certain Steel Nails from Taiwan, 84 Fed. Reg. 6,361 (Dep't Commerce Feb. 27, 2019) (partial rescission of [ADD] admin. review; 2017– 2018).

The fourth administrative review ("AR 4"), covering the period of review July 1, 2018 to June 30, 2019 ("POR 4"), is also pending. See Initiation of Antidumping and Countervailing Duty Admin. Reviews, 84 Fed. Reg. 47,242, 47,247–48 (Dep't Commerce Sept. 9, 2019). Given that all Taiwan Plaintiffs, except for WTA International, requested review, liquidation for those companies' entries is administratively suspended.

## JURISDICTION AND STANDARD OF REVIEW

The Court continues to have jurisdiction pursuant to Section 516a(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an investigation of an ADD order.

Section 1516a(c)(2) authorizes the Court to enjoin liquidation "upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances." 19 U.S.C. § 1516a(c)(2). To obtain the relief of an injunction, a plaintiff carries the burden to establish that: (1) it is likely to suffer irreparable harm without the injunction; (2) it is likely to succeed on the merits; (3) the balance of equities favors plaintiff; and, (4) granting the injunction will not run counter to the public's interest. See Ugine & Alz Belgium v. United States, 452 F.3d 1289, 1292 (Fed. Cir. 2006); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). No one factor is dispositive, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993); see also Qingdao Taifa Group Co., Ltd. v. United States, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009). "Whether to grant a preliminary injunction is a matter within the trial court's discretion." Ugine, 452 F.3d at 1292. The purpose of an injunction is to preserve the status quo during the pendency of judicial proceedings so to provide the parties with any relief the court ultimately grants. See 19 U.S.C. § 1516a(c)(2); Ugine, 452 F.3d at 1297.

## DISCUSSION

Taiwan Plaintiffs request the court to enjoin liquidation of entries entered, or withdrawn from warehouse, for consumption into the United States on and after May 20, 2015. See Pls.' Br. at 1, Proposed Order. Taiwan Plaintiffs explain that liquidation would deprive them of a remedy to recover duties paid, should Commerce ultimately determine, following its remand redetermination ordered by the Court of Appeals, that all margins in the final determination are de minimis, resulting in revocation of the ADD Order. See Pls.' Br. at 4, 9–10, 12–14. Defendant partially opposes the motion, countering that there is no immediate threat of liquidation until the end of an administrative review ("AR"), or where review has not been requested, until liquidation instructions issue. See Def.'s Br. at 1–2. Insofar as Taiwan Plaintiffs request an "indefinite and open-ended" injunction, Defendant opposes Taiwan Plaintiffs' motion; however, Defendant consents to an injunction with an end date corresponding to the end of POR 3. Id. at 2. Mid Continent opposes Taiwan Plaintiffs' motion and requests the court to either deny the motion or partially grant the motion by limiting the period of injunctive relief to correspond to the end of POR 3, i.e., June 30, 2018. See Def.-Intervenor's Br. at 1. For the reasons that follow, the court grants Taiwan Plaintiffs' motion to enjoin liquidation of entries made on and after May 20, 2015, because Taiwan Plaintiffs have demonstrated that there is a present risk that entries subject to AR 1 and subsequent reviews may liquidate prior to judicial resolution of this proceeding and that they will suffer irreparable harm should their entries liquidate. Balancing this concern along with the other factors, i.e., likelihood of success

on the merits, the balance of equities, and the public interest, favors the injunctive relief sought.[4]

An antidumping proceeding begins with an investigation. By statute, Commerce is directed, in making a final determination that imports of subject merchandise are being sold, or likely to be sold, at LTFV, to disregard de minimis margins.  See 19 U.S.C. § 1673d(a)(4); see also id. at § 1673b(b)(3) (defining a de minimis margin as "less than 2 percent ad valorem or the equivalent specific rate").  If, however, an LTFV investigation yields affirmative findings, and the International Trade Commission also issues an affirmative injury finding, Commerce will publish an ADD order that imposes antidumping duties on subject merchandise.  See id. at § 1673e(a).

Once the ADD order is in place, Commerce conducts administrative reviews of the rates set forth in the order, and parties must provide cash deposits to secure any duties that are ultimately assessed.  See id. at §§ 1673e(a), 1675(a).[5]  Because the U.S. has a retroactive system of duties, Commerce is required to look back at a period of review ("POR") during an administrative proceeding to determine the extent of those duties.  See 19 C.F.R. § 351.212(a) (2014).  While Commerce conducts an AR, it administratively suspends liquidation of entries for all entities subject to its review, so that it will ultimately

---

[4] Taiwan Plaintiffs move for an injunction pursuant to USCIT Rule 56.2(a), which provides that "[a]ny motion for a statutory injunction to enjoin the liquidation of entries that are the subject of the action must be filed by a party to the action within 30 days after service of the complaint, or at such later time, for good cause shown." USCIT R. 56.2(a). "Good cause" exists for this injunction, even though more than 30 days have passed since Taiwan Plaintiffs filed their complaint on September 4, 2015. See generally Compl. At that time, entries were not susceptible to liquidation. Since then, the change in circumstances that gives rise to Taiwan Plaintiffs' request for injunctive relief, namely the passage of time allowing for several PORs and the Court of Appeals' remand order for Commerce to reconsider the Final Results, constitutes good cause.  See generally Midwest III, 940 F.3d, and subsequent ARs concluded.

[5] Interested parties may request administrative review "during the anniversary month of the publication of an antidumping or countervailing duty order." 19 C.F.R. § 351.213(b)(1).

be able to assess any antidumping duties. See id. at §§ 351.212(b), 351.213(a)–(b); see also 19 U.S.C. §§ 1675, 1673e(a). If no review is requested, or requests for review are withdrawn, Commerce will issue automatic liquidation instructions for CBP to assess antidumping duties at the cash deposit rates in effect at the time of entry. 19 C.F.R. § 351.212(c); see also 19 U.S.C. § 1504(d). Following completion of an AR, Commerce issues instructions to CBP lifting suspension of liquidation for that POR, unless parties seek judicial review and obtain an injunction. 19 U.S.C. § 1516a(c)(1)–(2) (authorizing liquidation of entries in accordance with Commerce's original determination, unless liquidation is enjoined). Injunctions are generally issued on consent and remain in effect for the duration of the court proceeding including all appeals. See id. at § 1516a(e). Otherwise, if there is no court-ordered injunction, Commerce issues instructions to CBP to lift suspension of liquidation, and CBP will liquidate, within six months, entries made during the POR at the cash deposit rate in effect at the time of entry. Id. at § 1504(d).

   Here, Taiwan Plaintiffs have established a "presently existing, actual threat" of irreparable harm for entries subject to AR 1 and subsequent administrative reviews. See Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (quoting S.J. Stile Associated Ltd. v. Snyder, 646 F2d 522, 525 (C.C.P.A. 1981) (internal quotations omitted)). Taiwan Plaintiffs challenge before this court Commerce's Final Results, which resulted in the ADD Order that serves as the basis for subsequent ARs. If, following completion of judicial review, Commerce ultimately determines all weighted average dumping margins are de minimis, that finding effectively nullifies an affirmative LTFV

determination[6] and, therefore, cannot serve as the basis for an ADD order to impose duties, see 19 U.S.C. § 1673 (providing that antidumping duties may only be assessed when there is a valid determination of dumping), or for subsequent administrative reviews. All unliquidated entries are subject to liquidation at that revised zero rate, irrespective of date of entry. See id. at § 1516a(e). Given that there is no provision, by statute, that permits reliquidation, see Zenith, 710 F.2d at 810, the liquidation of entries constitutes irreparable harm. Therefore, securing the full benefits of judicial review of the Final Results, which may result in the revocation of the ADD Order, requires an injunction to forestall liquidation prior to the completion of judicial review and ensure liquidation in conformity with the court's final decision.

      The danger of liquidation pending judicial review of an investigation constitutes irreparable harm. As explained in Husteel Co., Ltd. v. United States, 38 CIT __, 34 F. Supp. 3d 1355 (2014), the procedural complexities in the administration of antidumping and countervailing duty orders renders the threat of irreparable harm sufficiently imminent to warrant injunctive relief in connection with judicial review of an investigation. Id., 38 CIT at __, 34 F. Supp. 3d 1359-63. In that case, movants sought an injunction on entries covered by a final determination, arguing that liquidation would moot their challenge. Id. 38 CIT __, 34 F. Supp. 3d at 1358. Focusing on irreparable harm, the court noted that final ADD rates are not settled until the completion of the AR, and, that if a party does not request review, entries are liquidated without notice at the cash deposit rate. Id. 38 CIT at __, 34 F. Supp. 3d at 1360. Although Commerce administratively suspends liquidation

---

[6] If Commerce's final LTFV determination is negative, the investigation terminates, and Commerce will publish notice of the negative determination. It will also terminate suspension of liquidation and refund any cash deposits collected pursuant to 19 U.S.C. § 1673b(d)(1)(B).

of entries during ARs, not all entities seek AR. Id. Moreover, an administrative suspension of liquidation may terminate during judicial review. The court explained that issuing the injunction was "proper at this time, even if the threat of injury is not 'imminent' in the same sense it is following an administrative review[,]" because it would ensure that movants would receive the "full benefit" of their judicial challenge and possibly "obviate" the need for future administrative reviews. Id.

The danger of liquidation becomes sufficiently imminent when an ADD order is published. Pursuant to section 1673e(a), Commerce, in an ADD order, directs Customs to, inter alia, assess antidumping duties "after the date on which [Commerce] receives satisfactory information upon which the assessment may be based." 19 U.S.C. § 1673e(a). Commerce will, if requested, conduct an annual review under section 1675(a)(1) to determine the amount of ADD, which will be the duty assessed on entries during the POR. Id. at § 1675(a)(1); see also 19 C.F.R. § 351.212(a)–(b). Courts have long recognized that "[t]he necessary implication of reading section 1673e(a) together with section 1675, in pari materia, is that the suspension of liquidation of an entry must remain in effect throughout an administrative review by Commerce." [7] See American Power Pull Corp. v. United States, 40 CIT __, __, 121 F. Supp. 3d 1296, 1301 (2016) (citing Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984)). When Commerce publishes the final results of the AR, Customs has six

---

[7] Additionally, section 1673d(c)(1)(B)(3) requires Commerce suspend liquidation in cases where the preliminary determination by the administering authority was negative and the final determination was affirmative. See 19 U.S.C. § 1673d(c)(1)(B)(3). Such was the case here. See Certain Steel Nails from Taiwan, 79 Fed. Reg. 78,053 (Dep't Commerce Dec. 29, 2014) (negative prelim. determination of sales at [LTFV] and postponement of final determination). However, entries which are not subject to AR will be subject to automatic liquidation. 19 C.F.R. § 351.212(c).

months to liquidate entries covered by the POR.  19 U.S.C. § 1504(d).  If, however, an entity does not request administrative review, its entries are subject to automatic liquidation.  19 C.F.R. § 351.212(c).

Defendant's objection to Taiwan Plaintiffs' proposed injunction stems from its view that, because ARs are still in progress, the threat of harm is not sufficiently imminent.  See Def.'s Br. at 7–13.  Likewise, Mid Continent views any injunction as duplicative because of the suspensions of liquidation stemming from the ARs.[8]  See Def.-Intervenor's Br. at 1–2.  Both Defendant and Mid Continent fail to acknowledge the threat of harm that flows from the fact that the suspensions of liquidation for the ARs may be lifted with little notice while judicial review of the investigation remains pending.[9]  Here, most, but not all, Taiwan Plaintiffs have or are currently participating in ARs 1–4.  If, following Commerce's remand redetermination, the ADD Order is revoked, Taiwan Plaintiffs that have not participated in the ARs, or those that choose not to challenge the final results of an AR, will have no recourse to reimbursement for duties paid on liquidated entries.  Likewise, if

---

[8] Mid Continent would have Taiwan Plaintiffs take the "correct course of action" and seek extensions of current injunctions, as well as administrative suspensions of liquidation for entries under review.  Def.-Intervenor's Br. at 2–3.  Mid Continent argues that injunctions only issue to prevent presently existing and actual threats of injury, none of which exist here.  Id. at 2.

[9] Defendant contends that "[w]hen another mechanism such as an administrative review or statutory injunction prevents liquidation, the irreparable harm from which the applicant seeks immediate relief is absent," and cites to Sumecht NA, Inc. v. United States, 923 F.3d 1340 (Fed. Cir. 2019), as support.  See Def.'s Br. at 9.  Therefore, according to Defendant, an administrative injunction on entries from July 1, 2018 forward would not support a injunctive relief. Id.  However, Defendant's reliance on Sumecht is misplaced.  In Sumecht, the Court of Appeals agreed with the CIT that plaintiff Sumec had not demonstrated irreparable harm, because Sumec had obtained an injunction in a countervailing duty case covering the same entries in the ADD case.  Id. at  1346–47.  The Court of Appeals did not find Sumec's citations to other CIT cases persuasive, because none "require[] such overlapping injunctions."  Id. at 1346.  However, the Court of Appeals declined to "constrain the CIT's discretion by imposing this type of acontextual rule," and narrowly held that, "[u]nder these circumstances, Sumec's entries are currently protected from liquidation due to the Statutory Injunction."  Id. at 1346–47.

judicial review of an AR concludes without an injunction in the investigation, entries will be subject to liquidation in short order. Securing the full benefits of judicial review of the Final Results should not require participation in each AR. Otherwise, Taiwan Plaintiffs who fail to seek review will continue to face the risk that their entries will be liquidated at a rate that ultimately proves to be wrongful. See Laclede Steel Co. v. United States, 20 CIT 712, 717, 928 F. Supp. 1182, 1187 (1996). Requiring Taiwan Plaintiffs to traverse this route would not only risk denying Taiwan Plaintiffs the full benefits of judicial review, it would create perverse incentives to challenge, and seek judicial review of, each of Commerce's AR determinations. A litigant without a good faith basis to believe that an agency's AR determination was unreasonable on the record would be hard-pressed not to challenge the determination in court in order to fully preserve the remedy that would flow from a successful challenge to the initial investigation. True, a respondent could seek an injunction against liquidation after it decides not to seek judicial review of an AR, but the court fails to see why doing so should be required. The potential harm flows from the results of the investigation, not from the decision to forgo judicial review of an AR.

Indeed, the purpose of an injunction is to preserve the status quo during the pendency of judicial proceedings so as to provide the parties with any relief the court ultimately grants. See 19 U.S.C. § 1516a(c)(2); Ugine, 452 F.3d at 1297. The harm is immediate in light of the purpose behind the injunction, which is to secure judicial remedy in the instant case; failure to grant this remedy may deprive Taiwan Plaintiffs of that remedy, and the harm will be irreparable. Preserving the status quo until conclusion of this dispute demands enjoining liquidation of any Taiwan Plaintiffs' entries within the

Case 1:15-cv-00213-CRK    Document 139    Filed 02/07/20    Page 14 of 17

Consol. Court No. 15-00213 												Page 14

scope of the challenged order.  Therefore, an injunction against liquidation should apply to all entries from AR 1 going forward, until conclusion of the dispute.

    Moreover, the remaining three factors that guide a court's evaluation of whether to grant an injunction also support Taiwan Plaintiffs request.[10]  Regarding likelihood of success on the merits, numerous cases have explained that "[w]hen the irreparable harm factor tilts decidedly in favor of the movant, the burden of showing likelihood of success is lessened."  See Husteel, 38 CIT __, 34 F. Supp. 3d at 1362 (citing Qingdao, 581 F.3d at 1378–79; Ugine, 452 F.3d at 1292–93).  Taiwan Plaintiffs have raised a number of substantial questions concerning the Final Results.  See id. at 1362 (citing NMB Sing. v. United States, 24 CIT 1239, 1245, 120 F. Supp. 2d 1135, 1140 (2000) (When a movant demonstrates irreparable harm, "it will ordinarily be sufficient that the movant has raised serious, substantial, difficult and doubtful questions that are the proper subject of litigation.") (internal quotations omitted)).  Taiwan Plaintiffs commenced this action to contest, inter alia, Commerce's choice of methodology that supported its affirmative LTFV determination and led to the issuance of the ADD Order.  See generally Compl.  Following litigation before this court and appeal concerning this issue, Commerce, on remand, may determine that all margins are de minimis.  Without opining on the correct reading and probative value of the Court of Appeals' decision in Mid Continent III, which Defendant

---

[10] The court traditionally applies a "sliding scale" approach, where no single factor is dispositive, and the strength of one factor may overcome the weakness of another.  See Ugine, 452 F.3d at 1292–93 (quoting Corus Grp. PLC v. Bush, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1353–54 (2002).  Given that the risk of irreparable harm is generally considered the most crucial, see, e.g., Corus, 26 CIT at 942, 217 F. Supp. 2d at 1354 (collecting cases), the burden to make a showing of the remaining three factors diminishes.

contests, see Def.'s Br. at 13–14,[11] its remand order is sufficient to show that Taiwan Plaintiffs have at least a fair chance of success on the merits.

Further, the balance of equities favors an injunction.[12] As noted, Taiwan Plaintiffs face an immediate threat of irreparable harm, as entries could liquidate prior to the completion of judicial review in this case, leaving Taiwan Plaintiffs without remedy.  By contrast, Defendant and Mid Continent have not provided an explanation of any prejudice that the government or Mid Continent would suffer if the court grants the injunction as requested.  Despite Defendant's and Mid Continent's contentions to the contrary, such an injunction would not be "open ended" or "indefinite."  The injunction against liquidation would tie to the judicial proceeding, such that the injunction would expire once this proceeding concludes. Even if one adopts the characterization of "open-ended" or

---

[11] Defendant contends that Taiwan Plaintiffs have not demonstrated a likelihood of success on the merits, because the Court of Appeals upheld Commerce's methodology and, in its remand instructions to Commerce, requested Commerce to further explain that choice.  Def.'s Br. at 13–14.  Defendant implies that because Taiwan Plaintiffs have not demonstrated threat of irreparable harm, they must demonstrate more than a minimal likelihood of success.  See Defs.' Br. at 13–14 (citing Fuyao Glass Indus. Grp. Co. v. United States, 27 CIT 1166, 1171 (2003)).  However, for the reasons discussed above, Taiwan Plaintiffs have made a sufficient showing of immediate irreparable harm.  Therefore, Defendant's argument that Taiwan Plaintiffs must demonstrate a "high" likelihood of success on the merits is misplaced.  Def.'s Br. at 13–14.

[12] Defendant limits its discussion of this factor to a scenario where the court issues an "open-ended" preliminary injunction, arguing that "a broader injunction covering such future entries is not necessary to maintain the status quo."  Def.'s Br. at 14–15.  Defendant seems concerned that if the court were to grant the injunction Taiwan Plaintiffs seek that parties would routinely seek preemptive relief in the form of a request for an injunction in a case challenging an investigation.  Id. at 15.  But as the statutory and regulatory scheme make clear, in most cases suspension of liquidation will flow from the AR process such that litigants will not need to incur the expense of obtaining an injunction in connection with an investigation.  However, even if parties were to make such preemptive motions, Congress specifically provided for injunctions to protect against liquidation in 19 U.S.C. § 1516a(c).  The harm that flows from liquidation is irreparable; there seems to be no harm at all to the government or domestic parties stemming from an injunction on liquidation; and, ultimately, ensuring duties are imposed only when warranted is within the public's interest.

"indefinite" put forth by Defendant and Mid Continent, it is unclear how either party would suffer harm. Therefore, the balance of equities favors injunctive relief.

Finally, the public interest is served by the proposed injunction. Preventing liquidation maintains the status quo until the final resolution of this case and ensures that Commerce properly administers antidumping laws. See, e.g., Husteel, 38 CIT at __, 34 F. Supp. 3d at 1363. Here, an injunction not only safeguards Taiwan Plaintiffs' interests and may even obviate the need for future ARs, it also helps to ensure that duties will only be imposed when warranted, which is in the public interest.

## CONCLUSION

On balance, the factors support granting an injunction. Therefore, it is

**ORDERED** that Taiwan Plaintiffs' Motion for Preliminary Injunction is granted; and it is further

**ORDERED** that Defendant, United States, together with the delegates, officers, agents and employees of the International Trade Administration of the United States Department of Commerce and the U.S. Customs and Border Protection, shall be, and hereby are, enjoined, pending a final and conclusive court decision in this litigation, including all appeals and remand proceedings, from issuing instructions to liquidate or otherwise causing or permitting liquidation of unliquidated entries of subject merchandise from Taiwan that:

(1) are subject to antidumping duty order on certain steel nails from Taiwan published as Certain Steel Nails From the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam, 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015) (antidumping duty orders);

(2) were produced and/or exported by PT Enterprise Inc., Pro-Team Coil Nail Enterprise Inc., Unicatch Industrial Co., Ltd., WTA International Co.,

    Ltd., Zon Mon Co., Ltd., Hor Liang Industrial Corp., President Industrial Inc., and Liang Chyuan Industrial Co., Ltd.;

  (3) were entered, or withdrawn from warehouse, for consumption into the United States on and after May 20, 2015;

  (4) remain unliquidated the day upon which this Order is granted; and it is further

**ORDERED** that the entries covered by this injunction shall be liquidated in accordance with the final court decision in this action, including all appeals and remand proceedings, as provided for in section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e).

                 /s/ Claire R. Kelly
                 Claire R. Kelly, Judge

Dated: February 7, 2020
    New York, New York