# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE CLAIRE R. KELLY**

| | |
|---|---|
| MID CONTINENT STEEL & WIRE, INC., ET AL., <br><br> Plaintiff and Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> PT ENTERPRISE INC., ET. AL., <br><br> Defendant-Intervenors and Consolidated Defendant Intervenor. | Consol. Court No. 15-00213 |

## MID CONTINENT STEEL & WIRE, INC.'S COMMENTS ON FINAL REMAND RESULTS

Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 1050
Washington, DC 20036
(202) 991-2700
*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: July 13, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................... 1

II.   DISCUSSION .......................................................................................................... 2

III.  CONCLUSION ....................................................................................................... 6

## TABLE OF AUTHORITIES

### CASES

*Marmen Inc. v. United States*,
  134 F.4th 1334 (Fed. Cir. 2025) ................................................................... 1, 2, 4

*Marmen Inc. v. United States*,
  Slip Op. 26-62, Consol. Court No. 20-00169 (Ct. Int'l Trade June 15, 2026) ................... 2, 5, 6

*Mid Continent Steel & Wire, Inc. v. United States*,
  Consol. Court No. 15-213 (Ct. Int'l Trade Dec. 23, 2025) (May 15, 2026)...................... *passim*

*Mid Continent Steel & Wire, Inc. v. United States*,
  Court No. 2024-1556 (Fed. Cir. Dec. 2, 2025) .......................................................... 1

*Stupp Corp. v. United States*,
  No. 23-1663, 2025 WL 1178392 (Fed. Cir. Apr. 23, 2025) ................................................. 2, 4

*Toyo Kohan Co., Ltd., v. United States*,
  Slip Op. 26-54, Court No. 24-00261 (Ct. Int'l Trade May 22, 2026)..................................... 2, 5

### STATUTES

19 U.S.C. § 1677f-1(d)(1)(B) ...................................................................................... 1, 6

### ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Alternatives to the Use of Cohen's d; Request for Comment*,
  Fed. Reg. 21,277 (Dep't of Comm. May 19, 2025)...................................................... 2

*Antidumping Proceedings: Affiliated Party Sales in the Ordinary Course of Trade*,
  67 Fed. Reg. 69,186 (Dep't of Comm. Nov. 15, 2002) .............................................. 5

## I.     INTRODUCTION

On behalf of Mid Continent Steel & Wire, Inc. ("Mid Continent"), we submit these comments in support of the *Final Remand Results* issued by the U.S. Department of Commerce ("Commerce") (CM/ECF Doc. No. 231).  Final Results of Redetermination Pursuant to Court Remand, Certain Steel Nails from Taiwan, *Mid Continent Steel & Wire, Inc. v. United States*, Consol. Court No. 15-213 (Ct. Int'l Trade Dec. 23, 2025) (May 15, 2026) ("*Final Remand Results*").

In this litigation, Commerce requested a voluntary remand to reconsider its differential pricing analysis in accordance with the holding of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in *Marmen Inc. v. United States*, 134 F.4th 1334, 1345 (Fed. Cir. 2025) ("*Marmen I*").  In *Marmen I*, the Federal Circuit held that it was "unreasonable for Commerce to use the Cohen's *d* test" in analyzing whether there is a pattern of export prices, or constructed export prices, for comparable merchandise that differ significantly among purchasers, regions, or period of time under 19 U.S.C. § 1677f-1(d)(1)(B)(i).  *Id.*[1]  The Federal Circuit also held that Commerce could, on remand, develop and justify a new and different analytical approach for such an evaluation.  *Id.* at 1338.

On December 2, 2025, the Federal Circuit vacated the appealed decision of the Court of International Trade ("CIT") in this appeal and granted the requested remand, holding in its Order that Commerce "should have the opportunity to set forth an alternative policy analysis."  *Mid Continent Steel & Wire, Inc. v. United States*, Court No. 2024-1556 (Fed. Cir. Dec. 2, 2025).

---

[1] *See id.* at 1348 ("For the reasons above, and those explained in *Stupp*, we conclude that it was unreasonable to rely on Cohen's *d* test to determine whether prices differ significantly when the underlying data is not normally distributed, equally variable, and equally and sufficiently numerous").

In the *Final Remand Results*, Commerce revised its differential pricing analysis – discontinuing the use of the Cohen's *d* test as well as the mixed comparison method. In place of the Cohen's *d* test, Commerce applied its "price difference test," a reasonable approach based on a pre-existing practice, developed via a deliberative process, and involving comments from multiple parties. *See Alternatives to the Use of Cohen's d; Request for Comment*, Fed. Reg. 21,277 (May 19, 2025).

On January 13, 2026, this Court issued its Scheduling Order, directing that parties may file comments on the *Final Remand Results*. (CM/ECF Doc. No. 228). Mid Content submits these comments in accordance with that Scheduling Order.

## II.    DISCUSSION

Mid Continent supports Commerce's *Final Remand Results* and respectfully submits that the remand redetermination should be affirmed in its entirety. The *Final Remand Results* are consistent with the Federal Circuit's holding in *Marmen I*, as well as *Stupp Corp. v. United States*, No. 23-1663, 2025 WL 1178392 (Fed. Cir. Apr. 23, 2025) (non-precedential) ("*Stupp*"). Furthermore, in two recently-decided appeals the CIT upheld the same analysis applied by Commerce in the *Final Remand Results* as supported by substantial evidence and in accordance with *Marmen I*. *Marmen Inc. v. United States*, Slip Op. 26-62, Consol. Court No. 20-00169 (Ct. Int'l Trade June 15, 2026) ("*Marmen II*"); *Toyo Kohan Co., Ltd., v. United States*, Slip Op. 26-54, Court No. 24-00261 (Ct. Int'l Trade May 22, 2026) ("*Toyo Kohan*"). Thus, in accordance with *Marmen I & II*, *Stupp*, and *Toyo Kohan*, the Court should affirm the *Final Remand Results* as in accordance with law.

In the *Final Remand Redetermination*, Commerce discontinued its application of the Cohen's *d* test to PT Enterprise Inc.'s and Pro-Team Coil Nail Enterprise Inc.'s (collectively,

2

"PT's") margin calculation and instead applied a "price difference test" as the first step in its differential pricing analysis. *Final Remand Results* at 5-6.

Using its price difference test, Commerce determines whether the weighted-average net price to a given purchaser, region, or time period is within two percent of the weighted-average net price to all other purchasers, regions, or time periods. *Id*. at 6-7. When prices to a given purchaser, region, or time period fall outside this two percent band, Commerce determines that those prices differ significantly, and therefore that they "pass" the price difference test. *Id*.

In the second step of Commerce's differential price analysis, Commerce applied the "ratio test" to examine the extent of significant price differences across all of PT's U.S. sales by comparing the total value of sales that pass the price difference test with the total value of all sales made by PT to the U.S. market during the period of investigation ("POI"). *Id*. at 6-7. Under the ratio test, if more than 33 percent of the total value of U.S. sales "pass" the price difference test, Commerce will find that a pattern of price differences existed during the POI.

Historically, Commerce has included a "mixed method" option when applying the ratio test – allowing for different methods of calculating the dumping margin for certain sales if more than 33 percent of the U.S. sales, but less than 66 percent of sales, passed the Cohen's *d* test. However, Commerce explained on remand that because the statute does not require the application of a mixed method, and discontinuation of the mixed method "enhanced Commerce's ability to address masked dumping," it determined to discontinue the use of the mixed method as part of its ratio test analysis. *Id.* at 27-28.

Finally, under Commerce's third differential pricing test, the "meaningful difference test," once Commerce determines that more than 33 percent of the total value of U.S. sales have passed the price difference test, Commerce then examines whether there is a meaningful

difference in the weighted-average dumping margins calculated using the standard average-to-average comparison method versus the alternative average-to-transaction comparison method. If Commerce finds that a meaningful difference in the weighted-average dumping margins exists, then Commerce will use the average-to-transaction method in its margin calculations. *Id*. at 7-8.

On remand, Commerce determined that 89.84 percent of the value of PT's U.S. sales passed the price difference test, that a pattern of prices that differ significantly among PT's purchasers, regions, or time periods existed, and that the average-to-average method could not account for meaningful differences between the standard average-to-average method and the average-to-transaction method. *Id.* at 8. Accordingly, in the *Final Remand Results* Commerce applied the average-to-transaction method to calculate PT's weighted-average dumping margin. *Id.* Commerce's revised margin calculations utilizing its new approach produced a dumping margin of 4.88 percent *ad valorem* for PT, well above the *de minimis* threshold and supporting Commerce's original imposition of the antidumping duty order at issue.

The *Final Remand Results* are supported by substantial record evidence the record and fully in compliance with the Federal Circuit's holdings in *Marmen I* and *Stupp*. Although the Federal Circuit invalidated the use of the Cohen's *d* test in Commerce's differential pricing analysis, the Court also explicitly stated that Commerce was not precluded from fashioning a different analysis, as long as the new analysis could be "justified as sound for gauging differences in the data sets at issue." *Marmen I*, 134 F. 4th at 1348. Likewise, in *Stupp* the Court found that the use of Cohen's *d* was unreasonable, but allowed Commerce to "re-perform a differential pricing analysis without relying on Cohen's *d.*" *Stupp* at *2. That is exactly what Commerce has done in this case.

4

Specifically, Commerce has replaced the Cohen's *d* test with its historical two percent threshold price difference test to determine if U.S. prices differ significantly among purchasers, regions and time periods. *Final Remand Results* at 15. That test has long been used by Commerce to evaluate whether prices to affiliates in the comparison market are made on an "arm's-length" basis, and if they are not made on an "arms-length" basis, to disregard those sales for comparison purposes. *See Antidumping Proceedings: Affiliated Party Sales in the Ordinary Course of Trade*, 67 Fed. Reg. 69,186, 69,187 (Dep't of Comm. Nov. 15, 2002). Such a threshold is entirely appropriate to also evaluate differences in U.S. sales prices for purposes of Commerce's differential pricing analysis.

In *Toyo Kohan*, the CIT agreed with that conclusion. The Court held that Congress had "not delineated exactly how Commerce shall assess" whether there is a pattern of export prices that differ significantly and found that "Commerce's two percent price difference test reasonably implements section 1677f-1(d)(1)(B)'s directive" to determine whether prices differ significantly. *Toyo Kohan*, Slip Op. 26-54 at *18-*19. The Court held that the "language of the statute affords Commerce discretion to fashion its methodology" to determine if prices differ significantly and sustained the same differential pricing analysis applied by Commerce in the *Final Remand Results* as supported by substantial evidence and otherwise in accordance with law. *Id.* at *5.

Even more recently, in *Marmen II*, the CIT held that Commerce's "adoption of the 2% threshold in the first stage of its differential pricing analysis in the new 'price difference test' is reasonable and complies with" the Federal Circuit's holding in *Marmen I*. *Marmen II*, Slip Op. 26-62 at *17. Addressing Commerce's remand language in that case, which was largely identical to the language used in the *Final Remand Results*, the CIT held that "Commerce's

5

application of the 'price difference test' to determine whether there is a pattern of prices for comparable merchandise that differ significantly among purchasers, regions, or time periods, applied as a component of its differential pricing analysis, is in accordance with law." *Id.*

In *Marmen II*, the Court also addressed Commerce's decision to discontinue the use of the mixed method as part of its ratio test. *Id.* at *19-*25. Again, addressing remand language in that case that mirrors the language used in the *Final Remand Results,* the Court held that the Federal Circuit in *Marmen I* directed that Commerce could "re-perform a differential pricing analysis," and Commerce's decision on remand to remove the mixed method from its differential pricing analysis "was reasonable when refashioning a new analytical framework to implement 19 U.S.C. § 1677f-1(d)(1)(B)." *Id.* at *25 (citing *Marmen I*, 134 F.4th at 1348). As the Court concluded, the "absence of statutory language referring to a mixed method supports Commerce's determination to discontinue the use of its 'mixed method.'" *Id.* at *19.

The *Final Remand Results* in this litigation use, in large part, the same language, analysis, and legal authorities applied in the redeterminations affirmed by the CIT in *Toyo Kohan* and *Marmen II*. The Court in both cases determined that the statute grants Commerce the discretion to apply its two percent threshold price difference test, and in *Marmen II* the Court held that Commerce also acted within its discretion in discontinuing the use of the mixed method in applying its ratio test. We fully agree with the Court in both those decisions and respectfully request that this Court affirm Commerce's *Final Remand Results* consistent with the holdings in *Toyo Kohan* and *Marmen II*.

## III.    CONCLUSION

For the reasons discussed above, Mid Continent respectfully requests that the Court determine that Commerce's *Final Remand Results* are supported by substantial evidence on the

record, in compliance with the Federal Circuit's holding in *Marmen I*, and otherwise in accordance with law.

Respectfully submitted,

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 1050
Washington, DC 20036

*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: July 13, 2026

7

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that these comments comply with the word limitation requirement.  The word count for Plaintiff Mid Continent Steel & Wire, Inc.'s Comments in Support of Final Remand Results, as computed by The Bristol Group PLLC's word processing system, is 2,303 words, below the 10,000-word limit pursuant to Standard Chambers Procedures 2(B)(1)(b).

/s/ Adam H. Gordon
Adam H. Gordon
**THE BRISTOL GROUP PLLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July, 2026, I electronically filed a copy of the forgoing using the CM/ECF system, which sent a notification of such filing to counsel of record for all parties.

*/s/ Adam H. Gordon*
Adam H. Gordon